*E-FILED 3/26/07*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHEN E. SNYDER, AS TRUSTEE FOR THE LIQUIDATION OF CONSOLIDATED INVESTMENT SERVICES, INC, <br><br> Plaintiff, <br><br> v. <br><br> WAVECREST CORPORATION, ET AL., <br><br> Defendants. | NO. C 04-02926 RS <br><br> **REPORT AND RECOMMENDATION AND ORDER THAT CASE BE REASSIGNED** |

## I. INTRODUCTION

Plaintiff Stephen E. Snyder, in his capacity as Trustee for the liquidation of Consolidated Investment Services, Inc, moves to confirm the award of an arbitrator entered in this dispute and to enter judgment thereon. Snyder further moves for certification of the judgment under 28 U.S.C §1963 to permit it to be registered and enforced in other states immediately. Because of an issue relating to defendant's consent to the jurisdiction of the undersigned to decide these issues, the Court will proceed by report and recommendation, and order that this action be assigned for disposition by a district court judge.

The primary legal issue presented is whether a federal court, having compelled parties to arbitrate their dispute, thereafter has jurisdiction to confirm the award and enter judgment thereon where the arbitration provision does not expressly provide for such jurisdiction. The Court concludes that, at least under the particular facts of this case, such jurisdiction does exist, and

therefore will recommend that plaintiff's motions be granted.

## II. BACKGROUND

A. <u>The Underlying Dispute</u>

Stanford Square, LLC ("Stanford Square") owned a commercial office building located at 100 Hamilton Avenue in Palo Alto, California. Under Stanford Square's operating agreement, the property was managed by Stanford Square Management Company ("Stanford Management"). In March of 2002, Snyder and Stanford Management entered into a settlement agreement pertaining to a dispute otherwise unrelated to this action. In that agreement, Stanford Management assigned all of its rights, titles, and interests under the Stanford Square operating agreement to Snyder.[1]

It apparently was Snyder's intent to become the new manager under the operating agreement, but Lewis Graham, a member of Stanford Square, challenged Snyder's right to do so without approval of the membership. Ultimately an election was held, and a majority of Stanford Square's membership voted for Graham's company, defendant Floworks, Inc, to assume the management position from Stanford Management.

Under the terms of the operating agreement, any "substitute" manager was required to compensate the "retiring" manager for taking over the position. The amount of such compensation was to be "agreed upon" between the parties, and if no agreement could be reached, then "the dispute shall be submitted to arbitration." (Operating Agreement ¶ 10.5, Decl. of S. Snyder in Support of Motion for Summary Judgment, filed December 28, 2004, [Docket No 18-1], Exh. A.)

Floworks has apparently never denied that by accepting election as the new manager of Stanford Square, it became liable under the operating agreement to negotiate for an amount to be paid to the prior manager and to arbitrate the amount of that payment if no agreement could be reached. Floworks denied, however, that the assignment by Stanford Management to Snyder created any obligation on Floworks' part to negotiate or arbitrate a payment amount with *Snyder* as opposed

---

[1] More precisely, the assignment appears to have been made to a company owned by Snyder, followed by a subsequent assignment to Snyder. The details of the assignment history, however, are not relevant to the issues presented in these motions.

2

to with Stanford Management.  As a result, Snyder filed this action against Floworks in July of 2004, seeking  (1) a declaratory judgment that the assignment to Snyder of Stanford Management's right to be paid the value of the manager's interest was valid and binding on Floworks; (2) an order compelling Floworks to arbitrate the value of the interest or, in the alternative, a money judgment for the value of the interest, and; (3) imposition of a constructive trust and equitable lien on Floworks' interest as manager of Stanford Square as a means for securing the alleged obligation to pay the arbitrated amount.

### B.  The Partial Summary Judgment Proceedings

On November 10, 2004, Snyder and Floworks filed their first joint case management conference statement in these proceedings. (Docket No. 11.)  In that statement, the parties agreed that there were no factual issues to be resolved as to the validity and effect of the assignment between Stanford Management and Snyder, rather the issue was "solely a question of contractual interpretation." (Docket No. 11, p.3.)  The parties further jointly represented that "[t]he principal factual issue in the case will be the value of the [the amount to be paid], but this issue will be addressed through the *binding arbitration* which will follow if [Snyder] is successful on the interpretation issue.  (*Id*., emphasis added.)

The parties went on to state expressly that they "agree[d] that if [Snyder] prevails on this first claim [for declaratory relief as to the validity and effect of the assignment], the Operating Agreement for [Stanford Square] requires *binding arbitration* as to the amount of the Payment." (*Id.* at p.4, emphasis added.)  Accordingly, the joint case management conference statement proposed that Snyder would file a motion for partial summary judgment on the assignment issue, and that the Court would "depending upon the result [of the summary judgment motion], enter further orders compelling arbitration or other matters as appropriate." (*Id*.)

Snyder thereafter filed his motion for partial summary judgment.  Floworks' opposition to the motion did not contend material facts were in dispute, but argued that the assignment between Stanford Management and Snyder was not effective as a matter of law to create any obligation on Floworks' part to negotiate or arbitrate a payment amount with Snyder.  On  February 11, 2005, this Court entered its order rejecting Floworks' arguments and granting Snyder's motion.  (Docket

3

1   No.25.)  The Court expressly found that under the operating agreement "Floworks must submit the
2   amount of the payment to arbitration."  (*Id*. at p.7.)

3         The parties then filed a second joint case management conference statement in which they
4   proposed procedures for selecting an arbitrator. (Docket No. 26, p. 2.)  The parties jointly
5   represented that, upon appointment of an arbitrator, they "agree[d] that this civil action may be
6   stayed . . .pending any request by either party for . . . further proceedings to *enforce any award*
7   *[that] is entered upon completion of arbitration*." (*Id.* at p.3, emphasis added.)

8         Subsequently, the parties were unable to reach agreement on appointment of an arbitrator,
9   and further motions were filed.  In response, on May 4, 2005, the Court entered an order appointing
10  the Hon. Read Ambler (Ret.), an arbitrator whom both sides had agreed would be acceptable.

11        C.  The Arbitration Award

12        On February 13, 2007, Judge Ambler entered his final arbitration award in favor of Snyder in
13  the amount of $1.5 million, plus prejudgment interest of $266,671.11 through the date of the award,
14  and costs of $44,997.97.  Judge Ambler's decision was set forth in 21 pages detailing his evaluation
15  of the evidence and the parties' legal arguments.  Although Floworks' opposition to the present
16  motion stated an intent to move to "vacate" the award, it has not done so to date.  In opposing
17  confirmation, Floworks has made no arguments that Judge Ambler's decision was legally or
18  factually flawed or that he in any manner exceeded his jurisdiction.  Rather, Floworks has argued
19  only that the arbitration was non-binding and that this Court lacks jurisdiction to confirm the award
20  and to enter judgment thereon.

21        D.  Consent to Jurisdiction of the Magistrate Judge

22        In the first joint case management conference statement, Floworks expressly consented in
23  writing to the jurisdiction of the undersigned "for resolution of the issue concerning the validity and
24  effectiveness of the assignment of the right to receive the Payment."  Floworks further expressly
25  consented that if Snyder prevailed on that issue, it "would stipulate to orders compelling and
26  directing arbitration."  (Docket No. 11, p.3.)   Under 28 U.S.C. § 636 (c) a magistrate judge may
27  conduct "any or all proceedings" in a civil proceeding upon "consent of the parties." Accordingly, it
28  is beyond dispute that Floworks consented, and that the undersigned had jurisdiction, to decide the

4

motion for partial summary judgment and to compel arbitration herein.

Upon reviewing Snyder's present motions, the Court became aware that defendant had not filed a general consent to the jurisdiction of a magistrate judge in this action on the forms provided by this District for that purpose. Accordingly, prior to the hearings on this motion, the Court, through its law clerk, presented Floworks' counsel with both a form to consent to jurisdiction and a form to decline jurisdiction, and requested that Floworks make an election. Counsel for Floworks signed the form consenting to jurisdiction, but interlineated that standard consent form with language that appeared to be an attempt to clarify that Floworks was not abandoning its substantive arguments made in opposition to these motions.

Unfortunately, the language of the interlineation served only to confuse, rather than to clarify matters.[2] Given all the circumstances, the Court is unwilling to permit even the possibility of a subsequent argument that it acted in excess of its jurisdiction under 28 U.S.C. § 636 with respect to the present motions. Accordingly, although the Court regrets imposing on the District Court judges in circumstances where the parties *did* intend to consent to the jurisdiction of the undersigned and attempted to express that consent in writing, the Court concludes that the most prudent course of action is to proceed by means of report and recommendation, with reassignment to a United States District Judge for further proceedings.

### III.  DISCUSSION

A. <u>The Arbitration Was Binding</u>

In opposition to these motions,[3] Floworks first contends that even assuming this Court was correct in concluding that Floworks was obligated to arbitrate the underlying dispute, Floworks never understood or agreed that the arbitration would be *binding* as opposed to non-binding. In

---

[2] In view of the ambiguities presented by the interlineation, the consent form was not filed.

[3] As discussed in Section C below, Floworks filed *no* opposition specifically addressed to Snyder's motion to certify the judgment under 28 U.S.C. § 1963 to permit it to be registered for enforcement in other jurisdictions. The propriety of granting that motion, therefore, stands or falls with Floworks argument that there is no jurisdiction to confirm the award and enter judgment in the first instance.

5

support of this argument, Floworks relies on the fact that the arbitration clause in the operating agreement states only, "the dispute shall be submitted to arbitration," without using either the word "binding" or "non-binding."[4]

At the hearing Floworks candidly admitted that it was making this argument because the result of the arbitration was unfavorable to it; Floworks suggested that had the arbitration gone the other way, Snyder likely would be making the same argument now. It failed, however, to review the record adequately to determine whether this argument was tenable. Even at the hearing, Floworks insisted that it had never used the word "binding" to describe the arbitration in prior representations to this Court. As set out above, that is simply not accurate. The initial *joint* case management conference statement, signed by Floworks' counsel, stated, "this issue will be addressed through the *binding arbitration* which will follow if [Snyder] is successful on the interpretation issue." (Docket No. 11, p.3, emphasis added.) The same document declared that the parties were in *agreement* that the operating agreement "requires *binding arbitration* as to the amount of the Payment." (*Id.* at p.4, emphasis added.)

The second *joint* case management conference statement, also signed by Floworks' counsel, may not have used the word "binding" *per se*, but it expressly provided that the parties anticipated "further proceedings to enforce any award [that] is entered upon completion of arbitration." (Docket No. 26, p. 3.) In a similar vein, there is no dispute that Floworks' answer stated "ADMIT" to an averment of the complaint herein that, if Snyder prevailed in arbitration, he would be entitled to "a money judgment in [his favor] against Floworks confirming the amount of any such arbitration award." (Complaint ¶ 46; see also Dunbar Decl. in Opposition to Motion to Confirm [Docket No. 52] (seeking relief from "inadvertent" admission to averment).)[5]

Finally, in addition to representing to this Court on multiple occasions that it agreed the

---

[4] The operating agreement actually states, "the dispute shall be submitted to arbitration *as provided herein*." (Operating Agreement ¶ 10.5, Decl. of S. Snyder in Support of Motion for Summary Judgment, filed December 28, 2004, [Docket No 18-1], Exh. A, emphasis added.) Unfortunately, as Floworks correctly points out, there appear to be no further provisions in the operating agreement as to the nature or conduct of the arbitration.

[5] Although there is no dispute that Floworks' answer contained the admission described, the answer itself apparently was never filed and does not appear on the docket.

6

arbitration was to be binding or that a judgment confirming any award would be appropriate, the record shows that Floworks made a similar representation to a third party. In April of 2005, Floworks entered into a written assignment agreement with Langenberg Research, Inc. whereby Floworks transferred it rights and interests under the Stanford Square operating agreement to Langenberg. In that document, Floworks warranted that it owned the rights it was assigning "free and clear" of any claims except for the claims made by Snyder, which were "to be decided through *binding* arbitration under [the] auspices of District Court for Northern California [sic]." (Decl. of S. Snyder in Support of Order Permitting Immediate Registration for Enforcement, Exh. 3.)

It may be true that Floworks took the position that it had not agreed to arbitrate with Snyder at all. On this record, however, its argument that it did not agree or understand that if it lost that argument the arbitration would be binding and subject to judicial confirmation borders on the frivolous.[6]

B. The District Court Has Jurisdiction to Confirm the Award and Enter Judgment

As intuitive as it might appear that a court that compels a binding arbitration thereafter has jurisdiction to confirm the award and enter judgment, the question of whether a *federal* court has such jurisdiction is surprisingly close. Section 9 of the Federal Arbitration Act ("FAA") (9 U.S.C. § 9) provides, in relevant part,

> If the parties *in their agreement have agreed that a judgment of the court shall be entered upon the award* made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

(Emphasis added.)

Here, Floworks argues (correctly) that the arbitration clause in the operating agreement

---

[6] Floworks' passing request that it be permitted to amend its answer to omit the admission should be denied. Had that admission been the *only* instance where Floworks admitted in a pleading that the arbitration was binding or subject to judicial confirmation, a motion for leave to amend on grounds of inadvertence might be properly entertained. Under these circumstances, though, Floworks has not shown and cannot show that leave to amend is warranted.

7

1  contains no express provision for entry of judgment by this or any other court.[7] Floworks contends,
2  as a result, that no judge of this court has jurisdiction to grant Snyder's pending motions. In
3  conformance with California state statutes and practice, Floworks has filed a formal "rejection" of
4  the arbitration award and a request for trial de novo [Docket No. 54], as if the arbitration were
5  conducted under California's procedures for non-binding judicial arbitration. (See Cal. Code Civ.
6  P. §§ 1141.10, *et seq.*)[8] As noted above, Floworks has *not* filed a motion to *vacate* the award,
7  despite some indication that it intended to do so.[9]

8  Snyder argues that notwithstanding the language of Section 9 of the FAA, federal courts
9  have consistently held that jurisdiction to confirm an award and enter judgment flows from any order
10 compelling arbitration, whether or not the arbitration clause so specifies. It appears, however, that
11 Courts in only one circuit–the Second Circuit–have ever reached such a conclusion, and that the
12 reasoning behind those decisions is open to question. As an initial matter, when first confronted
13 with an arbitration clause that did not call for court confirmation, the Second Circuit concluded that
14 Section 9 of the FAA precluded confirmation of the award in federal court:

> It does not follow however that simply because the contract in issue involves interstate commerce, a federal court has jurisdiction to confirm the award and enter judgment. The Act provides that confirmation of an arbitration award is appropriate only where the parties "in their agreement have agreed that a judgment of the court shall be entered upon the award . . . ." 9 U.S.C. § 9. There was no such explicit agreement here . . . .

19 *Varley v. Tarrytown Associates, Inc.*, 477 F.2d 208, 210 (2d Cir. 1973). The trial court in *Varley*
20 had confirmed the arbitration award and entered judgment, but the Circuit held, "[i]n view of the

---

[7] Floworks also argues that neither it, nor Snyder, are signatories to the operating agreement and that therefore there is no arbitration agreement between them at all. As mentioned above, however, Floworks never contested that by accepting the benefits of its election as manager under the operating agreement, it was bound by the arbitration provision; it only argued that its obligation under that provision was to negotiate and arbitrate with Stanford Management, not Snyder. Floworks lost that argument on summary judgment and it will not be revisited here.

[8] Snyder, in turn, has filed a "motion to strike" Floworks' notice of rejection of the award [Docket No. 56]. Given that Floworks' notice has no legal effect, a specific ruling on the motion to strike is discretionary.

[9] The Court does not suggest that any statutory or non-statutory grounds to vacate the award appear to exist and Floworks should not file such a motion unless it has good faith arguments to the contrary.

8

explicit language of § 9 of the Act requiring such agreement and finding none, we have no alternative but to reverse." *Id.*  In *Varley*, the arbitration had gone forward *without* any order to compel arbitration by a court.

Some years later, the Second Circuit again examined the meaning and effect of Section 9 in *Smiga v. Dean Witter Reynolds, Inc.,* 766 F.2d 698 (2d Cir. 1985), the case on which Snyder most heavily relies.  The *Smiga* court acknowledged the *Varley* precedent, and did not expressly distinguish it.  *Smiga*, however, found jurisdiction to confirm an arbitration award existed because the trial court had previously denied a motion to stay the arbitration, which, it found, "was essentially the equivalent of an order by the district court to compel arbitration."  766 F.2d at 705.  Although the conclusion that denying a motion to stay an arbitration is equivalent to compelling arbitration appears sound, *Smiga's* finding that jurisdiction therefore existed is less well-founded.

*Smiga* asserted that the Second Circuit had previously "held that a court which orders arbitration retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate, including a motion to confirm the arbitration award."  766 F.2d at 705 (citing *Marchant v. Mead-Morrison Mfg. Co.*, 29 F.2d 40, 43 (2d Cir.1928).)  The *Smiga* court, however, appears to have misread *Marchant,* which neither involved nor discussed Section 9 of the FAA.  Rather, the question in *Marchant* was only whether a petition to confirm an arbitration award filed in New York *state court* was a new and separate proceeding from the original motion to compel arbitration that had also been filed in state court, so as to give defendant a new right to *remove* the matter to federal court based on diversity jurisdiction.  The *Marchant* court concluded only that the original application to appoint an arbitrator and compel arbitration, the arbitration itself, and the subsequent application to confirm the award, "was all one arbitration proceeding, to settle the controversies which had arisen between the parties . . . . [t]hey were not separable controversies."  29 F.2d at 43.
As a result, according to *Marchant*, the filing of the petition to confirm the award did *not* trigger the running of a new period to remove the matter to federal court.

Although the rationale of the *Marchant* court that matters such as this involve "all one arbitration proceeding," rather than "separable controversies" certainly supports a conclusion that, as

9

a practical matter, a court having jurisdiction to compel an arbitration *ought* to have jurisdiction to confirm the award, *Marchant* neither considered nor decided what jurisdiction a federal court has under Section 9 of the FAA where the terms of that provision are not satisfied. Accordingly, the *Smiga* court's reliance on *Marchant* as a basis for departing from the language of the statute or the Second Circuit's holding in *Varley* is uncertain, at best.[10]

Snyder asserts that *Smiga* has been followed in numerous other circuits, including by district courts in this circuit. A closer reading of the authorities Snyder cites, however, reveals that apart from *Smiga* itself and other cases in the Second Circuit, there do not appear to be any cases that have squarely held that a federal court obtains jurisdiction to confirm an arbitration award merely from having granted a motion to compel the arbitration. Rather, as explained by the Tenth Circuit, it appears that courts will find jurisdiction to confirm an award in the absence of an arbitration clause that expressly provides for such confirmation where at least one of two further conditions exist:

> In addition to explicit language evidencing a consent to judgment, courts have recognized two other methods by which parties can manifest consent to judicial confirmation of arbitration awards. If the parties to an arbitration clause agree that their arbitration shall be final and binding, some courts have held that the parties have consented to judicial confirmation of awards, because judicial involvement is the only way to make arbitration awards final and binding. [Citations.} This "finality exception" has been criticized, however, because "without more, it is equally plausible that a finality clause could be interpreted to mean [that] the parties intended to have the award enforced in state rather than federal court." [Citation.]
>
> Similarly, courts have also held that parties who agree that their arbitration shall be governed by the rules of the AAA [American Arbitration Association] have implicitly consented to judicial confirmation, because AAA Rule 47 (c) states that "[p]arties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof."

*P & P Industries, Inc. v. Sutter Corp.*, 179 F.3d 861, 867 (10th Cir. 1999).[11]

---

[10] Somewhat oddly, the *Smiga* court also cited a case from the Southern District of California for the proposition that jurisdiction to confirm an award follows from an order compelling arbitration. 766 F.2d at 705 (citing *Lesser Towers, Inc. v. Roscoe-Ajax Construction Co.*, 258 F.Supp. 1005, 1007 (S.D.Cal.1966).) *Lesser Towers*, however, considered only the same basic question (and reached the same result) as in *Marchant*–i.e. that a petition to confirm an arbitration award filed in state court does not trigger a right to remove to federal court.

[11] Snyder cites the following cases in support of his contention that the *Smiga* rule has been widely followed. Each, however, is distinguishable or otherwise not on point for one reason or another: *T&R Enterprises v. Continental Grain Co.*, 613 F.2d 1272, 1274 (5th Cir. 1980) (arbitration clauses expressly provided that arbitration was "final and binding"); *Balt. & O. Chi. Terminal R.R.*

1    Here, the arbitration clause in the operating agreement does not expressly provide that the
2 arbitration is to be final or binding, nor does it refer to or incorporate the rules of the American
3 Arbitration Association. Nevertheless, one clear principle that can be distilled from the precedents
4 is that Section 9 of the FAA has consistently been interpreted and applied as *not* necessarily
5 requiring an express reference to court confirmation of the award and entry of judgment within the
6 four corners of the document containing the arbitration clause. Rather courts will look beyond the
7 clause itself in an effort to determine whether the parties *intended* that the arbitration would be
8 binding and subject to court confirmation. As stated by the *P & P* court, the critical issue is whether
9 "the parties have agreed, *explicitly or implicitly*, that any eventual arbitration award shall be subject
10 to judicial confirmation." 179 F.3d at 866 (emphasis added.)

11    The facts of this case are perhaps unusual given that there was nothing in the text of the
12 operating agreement that would have precluded a party from taking the position from the outset that
13 any arbitration would be non-binding or that any award would not be subject to confirmation in this
14 Court. As set out above, however, *both* parties clearly, unequivocally, and repeatedly expressed
15 their understanding and agreement that the operating agreement should be interpreted as calling for
16 arbitration that *would* be binding and subject to confirmation in this court. Most significantly, the
17 parties jointly represented to the Court that: (1) "The parties *agree* that if the Trustee [Snyder]
18 prevails on this first claim, *the Operating Agreement* for [Stanford Square] *requires binding*
19 *arbitration* as to the amount of the Payment." [Docket No. 11, p. 4 (emphasis added)], *and*, (2) "the
20 parties *agree* that this civil action may be stayed . . . pending . . . further proceedings to enforce any

---

*v. Wisconsin Central, Ltd.*, 154 F.3d 404, 407 (7th Cir. 1998) (*Smiga* rule cited but without analysis of Section 9 of the FAA or any discussion of the arbitration clause at issue); *Public Serv. Co. v. Burlington N. R.R.*, 1995 WL 640375, *3-4 (10th Cir. 1995) (unpublished decision finding jurisdiction where arbitration agreement expressly called for court involvement in appointment of arbitrators *and* that arbitration would be "final and binding"); *Collins v. D.R. Horton, Inc.*, 361 F. Supp. 2d 1085, 1091 (D. Ariz. 2005) (*Smiga* cited as basis for jurisdiction where court had previously *dismissed* case after compelling arbitration; no analysis of Section 9 of the FAA or any discussion of the arbitration clause at issue); *Pacific Bell v. Covad Communs. Co.*, 1999 WL 390840 (N.D. Cal. 1999)(*Smiga* principle cited but rejected as basis for jurisdiction where court had not ordered arbitration in the first instance); *Grammar v. Artists Agency*, 2000 WL 1897256, *6 (C.D. Cal. 2000) (party that invokes court's jurisdiction to *vacate* award cannot challenge court's jurisdiction to *confirm* award; no analysis of Section 9 of the FAA or discussion of arbitration clause in dispute.)

11

1  award [that] is entered upon completion of arbitration." [Docket No. 26, p.3 (emphasis added)]

2  Accordingly, Floworks may be correct that the face of the operating agreement would allow
3  for an interpretation that any arbitration thereunder was non-binding and not subject to confirmation,
4  but Floworks is bound by its prior representation and agreement that the operating agreement should
5  be interpreted as requiring binding arbitration and permitting subsequent court enforcement of any
6  award.  For this reason alone, jurisdiction appears proper here, regardless of whether or not the rule
7  enunciated in *Smiga* is sound.

8  Finally, as a separate and independent basis for exercising jurisdiction, California Code of
9  Civil Procedure §§ 1285 et seq. provides for judicial confirmation of arbitration awards without any
10 requirement that the arbitration agreement refer to such confirmation.  Although Snyder has not
11 expressly invoked the California statute, there appears to be no reason that would preclude the Court
12 from applying it.  See *Home Ins. Co. v. RHA/Pennsylvania Nursing Homes*, Inc.,127 F.Supp.2d 482
13 (S.D.N.Y. 2001) (after initially concluding there was no jurisdiction to confirm award under FAA,
14 district court allowed party to seek to confirm award under state law).[12]  Notwithstanding the
15 discussion of section 9's "jurisdictional" requirements above, it is undisputed that the Court has
16 jurisdiction over this *action* on grounds of *diversity,* rather than by virtue of any provision of the
17 FAA.  Indeed, it is well-settled that a federal court *must* have such independent basis for jurisdiction
18 prior to acting under the FAA.  *Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.*, 460
19 U.S. 1, 25 n.32 (1983).   Additionally, although California's statutes governing confirmation of
20 arbitration awards appear in the state's Code of Civil Procedure and certainly include procedural
21 aspects, the question of whether an award is subject to judicial confirmation is substantive in nature.
22 Thus, there appears to be no barrier to this Court confirming the award pursuant to California law,
23 regardless of whether or not confirmation is also proper under the FAA.

24 As Floworks has not suggested that there is any reason that the award should not be
25 confirmed and judgment entered other than its arguments considered and rejected above, and

26

27  [12] In *Home Ins. Co.*, only a petition to confirm the award was pending and the court required
amendment of petition to seek confirmation under state law.  Here, such a procedural step would not
28  be necessary because there is an underlying complaint, not merely a petition to confirm the award.

confirmation and entry of judgment otherwise appearing proper, the undersigned recommends that Snyder's motion to confirm the award and enter judgment be granted.

### C. The Judgment Should be Certified Under 28 U.S.C §1963

28 U.S.C. § 1963, provides, in relevant part,

> A judgment in an action for the recovery of money or property entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal *or when ordered by the court that entered the judgment for good cause shown.*

(Emphasis added.)

To show "good cause" for immediate certification, a party need establish only "an absence of assets in the judgment forum, coupled with the presence of substantial assets in the registration forum" *Columbia Pictures Indus. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1197-98 (9th Cir. 2001). Here, Snyder has made that showing. See Decl. of S. Snyder in Support of Order Permitting Immediate Registration for Enforcement, and exhibits thereto. Floworks has not attempted to rebut this showing or even to oppose the motion to certify, apart from its general opposition that confirmation and entry of judgment is improper. Accordingly, the undersigned recommends that Snyder's motion to certify the judgment under 28 U.S.C. §1963 for immediate registration in other districts be granted.

### IV. CONCLUSION

For the reasons set forth above, this action shall be reassigned to a district court judge with the recommendation that plaintiff's motions be granted, and judgment entered and certified accordingly.

IT IS SO ORDERED.

Dated: March 26, 2007

_____
RICHARD SEEBORG
United States Magistrate Judge

13

**THIS IS TO CERTIFY THAT NOTICE OF THIS ORDER HAS BEEN GIVEN TO:**

Spencer T Denison    spencer.denison@hro.com, jan.diggles@hro.com

J. Mark Dunbar    mdunbar@dunbarlaw.com,

James Wesley Kinnear    wesley.kinnear@hro.com, alice.tam@hro.com; molly.morris@hro.com

Adria Yvonne LaRose    larosea@hro.com

Paula Quintiliani    paula.quintiliani@hro.com, jill.wilkinson@hro.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 3/26/07**                                                 **Chambers of Judge Richard Seeborg**

                                                                                **By:**        **/s/ BAK**

**United States District Court**
For the Northern District of California