**E-FILED on** 8/23/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHEN E. SNYDER,<br><br>      Plaintiff,<br><br>    v.<br><br>FLOWORKS, INC.,<br><br>      Defendant. | No. C-04-02926 RMW<br>JAMS Ref. No. 1110008572<br><br>ORDER DENYING MOTION TO INTERVENE; DENYING MOTION TO SET ASIDE JUDGMENT<br><br>**[Re Docket Nos. 73, 74]** |

Non-party Stanford Square Investors, LLC ("Stanford Square") moves to intervene pursuant to either Federal Rule of Civil Procedure 24(a) or, in the alternative, Rule 24(b) for the purpose setting aside this court's judgment entered May 24, 2007. For the reasons set forth below, Stanford Square's motions to intervene and to set aside judgment are both denied.

## I. BACKGROUND

### A.   Factual Background

Stanford Square Investors, LLC ("Stanford Square"), a limited liability corporation with approximately 100 members, owned a commercial office building located at 100 Hamilton Avenue in Palo Alto, California. Stanford Square was originally a Connecticut entity, but relocated to California. In August 1998, evidently as part of the move to California, the LLC members were

asked to vote on a new Operating Agreement. As set forth in further detail below, Stanford Square asserts that it has only recently discovered that this Operating Agreement was not validly adopted in 1998.

Under the Operating Agreement, the 100 Hamilton Avenue property was managed by Stanford Square Management Company ("SSMC"). The Operating Agreement includes provisions setting forth how the succession of managers is to proceed. SSMC's rights, titles and interests under the Operating Agreement were eventually assigned to plaintiff Stephen Snyder, who intended to become the new manager under the Operating Agreement. One of the members of Stanford Square, Lewis Graham, who is also a principal in defendant Floworks, asserted that Snyder did not have the right to become the Stanford Square manager without approval of the membership. Following an election by the Stanford Square members in 2002, SSMC/Snyder was voted out as manager and Floworks was voted to assume the management position.

The dispute between Floworks and Snyder continued. Article 10.5 of the Operating Agreement provided that any "substitute" manager was required to compensate the "retiring" manager for taking over management of the 100 Hamilton Avenue property. The amount of such compensation was to be agreed upon between the parties, but if no agreement could be reached, the dispute was to be submitted to arbitration.

The parties eventually submitted the dispute to arbitration before a court-appointed arbitrator, the Honorable Read Ambler (Ret.), whom both sides had agreed would be acceptable. On December 18, 2006, Judge Ambler entered his interim arbitration award in favor of Snyder. On February 13, 2007, Judge Ambler entered his final arbitration award in favor of Synder in the amount of $1,500,000, plus prejudgment interest of $266,671.11 through the date of the award and costs of $44,997.97 (collectively "substitute manager compensation").

In 2005 and prior to the commencement of arbitration, the 100 Hamilton Avenue property was sold. Stanford Square states that "[a]pproximately $2,388,134.85 dollars [sic] was assigned directly from escrow by Floworks from the proceeds from the sale of the Stanford Square's [sic] commercial property in Palo Alto, California in 2005 for the benefit of members and to make arrangements to pay whichever manager prevailed in the arbitration . . . ." Reply Supp. Mot.

ORDER DENYING MOTION TO INTERVENE; DENYING MOTION TO SET ASIDE JUDGMENT—No. C-04-02926 RMW, JAMS Ref. No. 1110008572
MAG                                     2

Intervene at 2.[1]  Stanford Square asserts that if it prevails in this action, $1.5 million will be returned to Stanford Square and its members. *Id.*

### B.     Procedural Background

Snyder moved to confirm the arbitration award and for the entry of judgment. On May 24, 2007, following a *de novo* review of Judge Seeborg's Report and Recommendation, this court entered an order adopting the report and entered judgment based thereupon. Floworks filed a motion to vacate the arbitration award (and, because the judgment had been entered, moved for a new trial or to alter or amend the judgment). On July 20, 2007, the court denied Floworks' motions, confirming the arbitration award and declining to alter or amend the judgment.

Prior to the hearing on Floworks' motions, on July 10, 2007, Stanford Square moved to intervene and to set aside the judgment. Its complaint in intervention seeks declaratory judgment that there was no operating agreement in place for Stanford Square from 1998 through 2005 and that neither Snyder nor Floworks is entitled to any commission or fees under the Operating Agreement under which the arbitration in this case took place. Stanford Square contends that it has only recently discovered that the Operating Agreement was never validly adopted by its members because the members never received a full copy of the Operating Agreement and that agreement was represented as being substantially identical to the agreement governing the Connecticut entity. Thus, according to Stanford Square, the Operating Agreement cannot serve as a basis for the dispute over the substitute manager compensation because it was not adopted. Additionally, Stanford Square asserts that the substitute manager compensation Floworks must now pay Snyder under this court's judgment will be taken from a payment made to Floworks in which Stanford Square claims to have a continued interest. The payment to Floworks was made from an escrow that was created to pay funds from the sale of the 100 Hamilton Avenue property to the manager under the Operating Agreement. Thus, Stanford Square contends that should that Operating Agreement be deemed invalid, the funds intended to pay the manager under the Operation Agreement would be owed to no one and instead will be re-distributed among its members.

---

[1] As stated at oral argument, apparently Floworks assigned the $2,388,134.85 that was previously in escrow to an Oregon company, Langenburg Research.

## II. ANALYSIS

Stanford Square asserts that it is entitled to intervene in this action because it is the real party in interest. It seeks to intervene of right under Federal Rule of Civil Procedure 24(a), but, in the alternative, asserts that this court may also permit it to intervene permissively under Rule 24(b). Assuming its motion to intervene is granted, Stanford Square asks this court to set aside the judgment on the basis that the Operating Agreement was never validly adopted and thus cannot serve as the basis for the substitute manager compensation that was adjudged to be owed by Floworks to Snyder.

### A.   Motion to Intervene

#### 1.   Intervention of Right

Rule 24(a)(2) provides:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Ninth Circuit has set forth four requirements that must be met by a party seeking to intervene as of right:

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003); *see also California ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006).

A proposed intervenor "bears the burden of showing that all the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). Courts "generally interpret the requirements broadly in favor of intervention." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996); *see also Lockyer*, 450 F.3d at 440 ("We construe Rule 24(a) liberally in favor of potential intervenors."). In considering a motion to intervene, the district court must accept as true nonconclusory allegations of the motion and proposed complaint in intervention

"absent sham, frivolity or other objections." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001).

As a preliminary matter, the court has significant concern that the Stanford Square pleading is a sham. The court views this attempt to intervene with suspicion for several reasons. First, it strains credulity that Stanford Square would have only discovered the alleged defect in the adoption of the Operating Agreement this year, approximately nine years after it was originally distributed for adoption in 1998. Stanford Square, by declaration of Lewis Graham, states that it discovered that no complete Operating Agreement had been filed for Stanford Square "while making an inquiry into the percentage of ownership interest of a former [Stanford Square] manager."[2] Decl. Lewis Graham ¶ 3.

Second, the court also has some doubts about the method used to "verify" that the Operating Agreement was not validly adopted: a vote by the membership of Stanford Square as to whether the Operating Agreement was validly adopted back in 1998. Stanford Square asserts that in March 2007, "more than 85% of Stanford Square members voted to confirm that the Operating Agreement was never validly adopted." Reply Supp. Mot. Intervene at 3. Thus, by a vote taken in early 2007 after the arbitrator had awarded $1.5 million to Snyder (preliminarily in December 2006 and finally in February 2007), Stanford Square purports to nullify an agreement which has been active for approximately nine years and actively litigated for at least three years. The timing of this vote coming after the arbitration award demonstrates that it is self-serving and strongly indicates that the grounds for the motion to intervene are less than genuine.

Third, the circumstances of this motion to intervene indicate that there is at least some level of cooperation between Stanford Square and Floworks. Stanford Square relies on six declarations to establish that the Operating Agreement was never validly adopted. Four of these declarations are effectively identical, setting forth the declarant's percentage of interest in Stanford Square, and asserting that the declarant "was never provided with a copy of the Operating Agreement and given an opportunity for or against its adoption." Each declaration also states, "To the best of my

---

[2] To the court's knowledge, the only other former Stanford Square managers have been SSMC and Snyder. As clarified at oral argument, this inquiry was made during discovery in another action involving Stanford Square, Graham (and one or more of his companies) and Snyder.

ORDER DENYING MOTION TO INTERVENE; DENYING MOTION TO SET ASIDE JUDGMENT—No. C-04-02926 RMW, JAMS Ref. No. 1110008572
MAG                                                     5

recollection, I did not have an opportunity vote [sic] on adoption of a proposed Operating Agreement and I never saw it in a final form or in the form deemed binding by the Arbitrator." Decl. Jerry Fenimore ¶ 5; Decl. Bruce Sand ¶ 5; Decl. Jeffrey Singer ¶ 5; Decl. John Hewitt ¶ 5. The fifth declaration is generally the same as the other four but adds "Upon information and belief" to each of the paragraphs. *See* Decl. Steven Schneider ¶ 5 (preserving the typographical error). The sixth declaration is from Lewis Graham, who is the current manager of Stanford Square and principal of defendant Floworks, and states that it was he who discovered the defect in the adoption of the Operating Agreement. Stanford Square's reliance on Graham's discovery of the purported defect in the Operation Agreement, while understandable since he was the most recent manager for Stanford Square, nevertheless provides some indication of collusion and sham pleading. From what the court has seen to date, it would appear that Floworks has been paid for its management services and that it has little to lose from the nullification of the Operating Agreement except for its obligation to pay Snyder as the former manager. Thus, Graham's "discovery" of this defect and Stanford Square's attempt to intervene to ensure that the Operating Agreement is not enforced is somewhat suspect.[3] The court therefore views Stanford Square's allegations and declarations with some caution. In any event, the court finds Stanford Square's motion untimely.

Timeliness of a motion to intervene depends on three criteria: 1) the current stage of the litigation; 2) the possible prejudice to other parties; and 3) the reason for any delay in moving to intervene. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995). In considering these factors, however, "any substantial lapse of time weighs heavily against intervention." *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). Timeliness is a threshold issue. "If the court finds that the motion to intervene was not timely, it need not reach any of the remaining elements of Rule 24." *Washington*, 86 F.3d at 1503 (citing *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990)

---

[3] Stanford Square's further assertion that the other five declarants have no possible ulterior motive than to get back the $1.5 million that would otherwise be paid to Snyder does not persuade the court that the motion to intervene is not collusive. Both Floworks and the Stanford Square members would benefit from the invalidity of the Operating Agreement: Floworks because it would be relieved of paying the judgment; Stanford Square because it would not have to pay its managers.

1    First, as set forth above in the procedural background discussion, this case, filed in July 2004, is well-advanced. In fact, at the point that Stanford Square filed its motion to intervene in July 2007, the court had already entered judgment (May 24, 2007) after considering the magistrate judge's report and recommendation (March 26, 2007) as to whether to confirm the arbitrator's award (February 13, 2007). Post-judgment intervention is typically disfavored because it creates delay and prejudice to existing parties and undermines the orderly administration of justice. *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997).

Second, there does not appear to be any dispute that intervention by Stanford Square would result in substantial prejudice to Snyder. The original parties to this action were ordered to arbitration, completed arbitration, and judgment has now been entered in favor of Snyder. The court has denied Floworks' motion to vacate the arbitration award and set aside that judgment. Stanford Square's design in intervening is, as it admits, to prevent Snyder from collecting that judgment. Reply Supp. Mot. Intervene at 3 (Snyder "100% correct" that Stanford Square's motions are intended to frustrate and delay his efforts to collect judgment).

Third, Stanford Square states that the reason for its delay in moving to intervene was that it did not know that it had a grounds on which to challenge the payment of the manager's fee. As set forth above, Stanford Square claims to have only discovered in September 2006 and confirmed by vote in March 2007 that the Operating Agreement had never been validly adopted. Accordingly, it contends that it has only briefly known about the possible defense of contract invalidity to the dispute between its former and current manager.

"A party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects*, 309 F.3d 1113, 1120 (9th Cir. 2002) (citations omitted). The focus of this inquiry is on "the date the person attempting to intervene should have been aware his interests would no longer be protected adequately by the parties, rather than the date the person learned of the litigation." *Officers for Justice v. Civil Service Comm'n of City & County of San Francisco*, 934 F.2d 1092, 1095 (9th Cir. 1991) (intervention allowed 10 years after consent decree because existing party changed its position on interpretation of important provision). "'Courts

generally have been reluctant to allow intervention when the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene.'" *Wilson*, 131 F.3d at 1304 (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7C Federal Practice and Procedure: Civil 2d § 1916 at 430 (1986)).  Here, Stanford Square has doubtless been aware that it had some sort of stake in this litigation since the suit was filed or, at least May 2005 (the time the parties were ordered to arbitration regarding the manager's fee by Magistrate Judge Seeborg) or June 2006 (the time of the first arbitration hearings between the original parties to the action), whether that interest was as an indemnitor or in the compensation to be paid to its manager.  Stanford Square's stated reason for its delay in seeking to intervene until July 2007 seems unreasonable in light of the fact that it, at minimum, should have known that it had a stake in the litigation since at least June 2006. Even assuming that Stanford Square did not understand that it had grounds to challenge the award or that Floworks did not adequately represent its interests until it had both "discovered" and "confirmed" that the Operating Agreement had not been validly adopted in March 2007 – an assumption that does not seem credible – it delayed until after the magistrate judge entered his report and recommendation and this court entered judgment thereon to file its motion to intervene.  That delay, from March to July 2007, while brief when compared with the total duration of this case, was critical given that Stanford Square only intervened after the magistrate judge's recommendation that the court confirm the arbitration award and enter judgment and this court's entry of judgment in the matter.  Stanford Square does not explain this delay.  Just because Stanford Square moved to intervene within a year of the entry of judgment as required under Rule 60 does not make the motion a timely one for purposes of intervention.  The court thus concludes that Stanford Square's motion to intervene is untimely.  Since the motion is untimely, the court doe not reach the other arguments raised by the parties.

### 2. **Permissive Intervention**

Stanford Square moves in the alternative for permissive intervention.  Permissive intervention may be granted under Rule 24(b) when: (1) there is an independent ground for jurisdiction; (2) the motion to intervene is timely; and (3) the movant's claim or defense and the main action have "a question of law and fact in common." *Venegas v. Skaggs*, 867 F.2d 527, 529

ORDER DENYING MOTION TO INTERVENE; DENYING MOTION TO SET ASIDE JUDGMENT—No. C-04-02926 RMW, JAMS Ref. No. 1110008572
MAG        8

(9th Cir. 1989). For the reasons set forth above with respect to intervention as a matter of right, the court does not find that this motion for permissive intervention is timely.

### B. Motion to Set Aside Judgment

Stanford Square also moves to set aside the judgment entered by this court on May 24, 2007. Because Stanford Square's motion to intervene is denied, its motion to set aside the judgment is also denied.

### III. ORDER

For the foregoing reasons, the court denies Stanford Square's motion to intervene and its motion to set aside the court's judgment.

DATED: 8/22/07

*/s/ Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Spencer T. Denison | spencer.denison@hro.com |
| James Wesley Kinnear | wesley.kinnear@hro.com |
| Adria Yvonne LaRose | larosea@hro.com |
| Paula Quintiliani | paula.quintiliani@hro.com |

**Counsel for Defendants:**

J. Mark Dunbar          mdunbar@dunbarlaw.com

**Counsel for Third Party Intervenors**

William J. Goines          goinesw@gtlaw.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**     8/23/07                              /s/ MAG
                                        **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California

ORDER DENYING MOTION TO INTERVENE; DENYING MOTION TO SET ASIDE JUDGMENT—No. C-04-02926 RMW, JAMS Ref. No. 1110008572
MAG                                        10